HAMLIN DEVELOPMENT COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamlin Dev. Co. v. Commissioner
Docket No. 8324-90R
United States Tax Court
T.C. Memo 1993-89; 1993 Tax Ct. Memo LEXIS 94; 65 T.C.M. (CCH) 2071; March 15, 1993, Filed *94 P, a corporation, established a pension plan in 1980. In 1983, petitioner received a favorable determination letter from respondent stating that P's pension plan was a qualified plan under sec. 401(a), I.R.C. The letter also stated that respondent's determination was effective for plan years beginning after March 31, 1981. In 1990, respondent mailed petitioner a final revocation letter stating that the favorable determination letter was retroactively revoked for plan years ending on or after March 31, 1985. Respondent's given reason for this revocation was that, although petitioner allegedly operated its pension plan consistently in accordance with the requirements under sec. 401(a), I.R.C., respondent determined from an examination of the 1986 plan year that petitioner did not amend the underlying written plan to comply with the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426. 1. Held: P exhausted administrative remedies within the Internal Revenue Service; thus, the Court has jurisdiction *95 under sec. 7476, I.R.C., to make a declaratory judgment on the qualification of the pension plan under sec. 401(a), I.R.C., and the tax exemption of the trust under sec. 501(a) I.R.C.
2. Held, further, although petitioner allegedly operated its pension plan consistently in accordance with the requirements under sec. 401(a), I.R.C., the pension plan does not meet those requirements in the plan years at issue because P did not timely amend the underlying written plan to comply with TEFRA, DEFRA, and REA; accordingly, for those years, the pension plan is not a qualified plan under sec. 401(a), I.R.C., and the accompanying trust is not tax exempt under sec. 501(a), I.R.C.
3. Held, further, disqualification of neither the pension plan nor the trust is avoided because of any claimed mitigating factors. For petitioner: Richard E. Rosin. For respondent: Jacqueline M. Hotz. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Respondent determined that the pension plan (Plan) operated by Hamlin Development Co. (petitioner) does not meet the requirements of section 401(a)[1] for its plan years 1986, 1987, and 1988. Respondent also determined that the *96 trust (Trust) that constituted a part of the Plan is consequently not exempt from taxation under section 501(a) for those same years. Following these determinations, respondent revoked a favorable determination letter previously issued to petitioner with respect to the Plan. The case was submitted on the basis of a stipulated administrative record that the parties agree contains all the relevant facts. Rule 217(a). After our review of the foregoing, we hold for respondent. Petitioner is attempting to invoke our jurisdiction under section 7476 and Rule 210(c), and obtain a declaratory judgment as to the qualifications of the Plan and the Trust under the provisions of sections 401(a) and 501(a), respectively. [2] *98 There are two principal issues for decision. First, we must decide whether petitioner has exhausted administrative *97 remedies within the Internal Revenue Service (Service) so that it may invoke our jurisdiction under section 7476 and Rule 210(c) to make a declaratory judgment with respect to the qualification of the Plan. Second, we must decide whether the Plan, which respondent had previously approved in 1983, is disqualified for the Plan years 1986, 1987, and 1988, because, even though petitioner allegedly operated the Plan consistent with the requirements under section 401(a), petitioner failed to amend the written Plan to reflect extensive legislation that was enacted in 1982 and 1984, and that substantially affected the qualification of pension plans under section 401(a). Since we answer both issues in the affirmative, we must also decide whether, as petitioner contends, there are mitigating factors that otherwise avoid such a disqualification of the Plan and the Trust. [3]
FINDINGS OF FACT Pursuant to Rule 122(a), the parties submitted this case to the Court without trial and on the basis of the pleadings and the facts recited in a jointly stipulated administrative record filed with the Court on March 17, 1992, and supplemented on June 15, 1992. The facts and accompanying exhibits contained in the administrative record and supplement are incorporated herein by this reference. Petitioner is a corporation that was formed and/or began operations on March 20, 1980. Its sole shareholder was, and has always been, Charles F. Faulkender (Faulkender). At the time the petition was filed, petitioner's principal place of business and corporate office was located in *99 Rochester, Michigan. Petitioner reports the results of its operations based on a fiscal year ending on March 31. The Plan was established and became effective on April 1, 1980. The Plan also reports the results of its operations based on a fiscal year ending on March 31. The Trust constitutes part of the Plan. The trustee is Faulkender. In the spring of 1986, Faulkender suffered a ruptured blood vessel in his brain and was ill throughout the remainder of the years at issue. The Plan is a defined benefit plan, within the meaning of section 414(j). Under the terms of the Plan as of March 31, 1985, all employees of petitioner that are at least 25 years old are eligible to enter the Plan on the date that is coincident with or next following their completion of 1 year of service. Further, all participants are eligible to retire from employment with their full retirement benefit upon reaching the age of 65. The normal retirement benefit generally equals a percentage of compensation, based on average salary during the highest 5 years of employment, less a percentage of the Social Security benefit that the participant receives at retirement. The normal retirement benefit is subject *100 to certain minimum and maximum monthly pension amounts. On March 31, 1983, the Service issued the following determination letter to petitioner with respect to the Plan: Dear Sirs: Based on the information supplied, we have made a favorable determination on your application * * *. Please keep this letter in your permanent records. Continued qualification of the plan will depend on its effect in operation under its present form. (See section 1.401-1(b)(3) of the Income Tax Regulations.) The status of the plan in operation will be reviewed periodically. The enclosed document describes some events that could occur after you receive this letter that would automatically nullify it without specific notice from us. The document also explains how operation of the plan may affect a favorable determination letter, and contains information about filing requirements. This letter relates only to the status of your plan under the Internal Revenue Code. It is not a determination regarding the effect of other Federal or local statutes. This determination is subject to your adoption of the proposed amendments submitted in your or your representative's letter dated Feb. 23, *101 1982. The proposed amendments should be adopted on or before the date prescribed by the regulations under Code section 401(b). This determination applies to plan year(s) beginning after Mar. 31, 1981. We have sent a copy of this letter to your representative as indicated in the power of attorney. This determination letter does not apply to any provisions of the Tax Equity and Fiscal Responsibility Act of 1982. If you have any questions, please contact * * *. Sincerely yours, /S/ District Director
Enclosures: Publication 794 Lmsa 645
On January 24, 1985, petitioner executed an amendment to the Trust agreement. [4] This amendment consisted solely of a change to one paragraph in the agreement entitled Contributions, Retirement Benefits, and Optional Modes of Payment. Following this amendment, the amended paragraph read as follows: The Corporation shall contribute into the account of each participant, a certain percentage of the participant's compensation as defined in paragraph 2.3(a) determined by the age of the participant as of the first fiscal year end he has qualified for participation, in order to provide for each participant a monthly pension, *102 commencing at his normal retirement date which monthly pension shall be an amount equal to one-twelfth (1/12) of 38.56% of the participant's final average compensation, reduced by 74.074% of the Social Security benefits received by a participant at retirement. The minimum monthly pension to be provided a participant under this plan will be Five Hundred ($ 500.00) Dollars per month and the maximum monthly pension to be provided a participant will be Seven Thousand Five Hundred ($ 7,500.00) Dollars per month, and the minimum contract coverage will be for One Thousand ($ 1,000.00) Dollars of insurance or Twenty ($ 20.00) Dollars per month, if any retirement annuity. For purposes of this plan, the assumed retirement benefit shall be derived from using a 6% per year compounded annually interest assumption and be based upon the contributions of the corporation for each participant as set forth above. The actuarial methods to be employed for purposes of determining the corporation's contribution for each participant, shall be the attained age level premium cost method. Payment of the corporation's contribution to the trust under the terms hereof will be made to the trustee within *103 the time prescribed by law, including, if applicable, any extension of time for the filing of federal income tax return for such year, or within such other period as is provided in Section 404(a)(6) of the 1954 Internal Revenue Code, as amended, or in any other statute of similar import. The contribution under this paragraph 5.1 shall only be made if the participant is employed by the corporation on the last day of the fiscal year of the corporation, and during such fiscal year has either completed the requisite number of hours within one of the periods specified in paragraph 2.1(d) whether or not such employment period, employment year or plan year overlaps two fiscal years, or completes not less than One Thousand (1,000) hours of service during such fiscal year.
On October 23, 1985, National Benefit *104 Consultants, Inc. (National), an actuarial firm, prepared a written report on the actuarial valuation of the Plan covering the plan year beginning April 1, 1984. The actuarial certification included in this written report stated, in part, that the report was prepared relying on "(a) information on employees provided by [petitioner], which maintains records for the plan, and (b) information regarding plan assets as provided by [Faulkender]." Similar written reports on the Plan (including similar actuarial certifications) for each of the following 3 Plan years were also prepared by National in 1986, 1987, and 1988, respectively. On March 31, 1988, petitioner ceased doing business and stopped making contributions to the Plan. On November 30, 1988, each participant's accrued benefit in the Plan was as follows: Charles Faulkender
$ 212,811
Timothy Faulkender
2,599
Albert Fitchett
5,622
D. Wayne Fitzgerald
1,134
David Wayne Fletcher
660
Ruth McKenzie
238
Terri White
1,513
TOTAL
$ 224,577
In or about December 1988, petitioner distributed to the participants their respective accrued benefits in the Plan. Before these distributions, on October 25, 1988, respondent's *105 Employee Plans Group notified petitioner that it would be examining the Registration Statement of Employee Benefit Plans (Form 5500-R) that had been filed on behalf of the Plan for its year ending March 31, 1986. For purposes of this examination, respondent requested that petitioner provide documentation of amendments that were required to be made to the Plan pursuant to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, enacted September 3, 1982, the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, enacted July 18, 1984, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, enacted August 23, 1984. Petitioner did not provide any such documentation. Moreover, the record does not contain even a scintilla of evidence that, with the exception of the second amendment to the Trust agreement, petitioner ever made any amendments to the written Plan following the enactment, or as a result, of these Acts. Petitioner contends, however, that it always operated the Plan consistently in accordance with the requirements of section 401(a). Following the completion of an examination, respondent mailed petitioner *106 a letter, dated October 20, 1989, proposing to disqualify the Plan for its Plan years ending on or after March 31, 1985. This letter also stated that petitioner had 30 days in which to file an administrative appeal of respondent's proposed disqualification, and enclosed a publication explaining the procedures for making such an appeal. Petitioner did not file for an administrative appeal of respondent's proposed disqualification. On January 31, 1990, respondent mailed petitioner a final revocation letter with respect to the Plan. The final revocation letter stated that the Plan did not meet the requirements of section 401(a) for its Plan years ending on or after March 31, 1985, and the Trust was not exempt from taxation under section 501(a) for the same years. The letter also stated that respondent was revoking the favorable determination letter that was mailed to petitioner on March 31, 1983. The given reason for this revocation was that respondent had determined the Plan was not timely amended to comply with TEFRA, DEFRA, and REA. On April 30, 1990, petitioner filed a petition with the Court to declare the status of the Plan and the Trust for the years at issue. Petitioner *107 later amended its petition on July 3, 1990 (hereinafter, the petition and the amended petition will collectively be referred to as the petition). OPINION Requirements for Making a Declaratory Judgment
The first issue we must decide is whether the Court has the authority to make a declaratory judgment with respect to the qualification of the Plan under section 401(a), and the exemption of the Trust under section 501(a). Before the passage of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, we would have been required to decide this issue in the negative. More specifically, before the enactment of ERISA, an employer could not petition the Court to review respondent's determination (or refusal to make a determination) that the employer's pension plan failed to qualify under section 401(a). H. Rept. 93-807, at 106 (1974), 1974-3 C.B. (Supp.) 236, 341. Instead, the employer under the then-existing law could seek judicial review of respondent's action (or inaction) only after the employer made contributions to its plan, claimed the contributions as a deduction on its Federal income tax return, and had those *108 deductions disallowed by the Service. Id. at 106, 1974-3 C.B. (Supp.) at 341. In 1974, Congress enacted ERISA to deal with a number of problems in the retirement area, one of which was the unavailability of a judicial forum to review such a situation. Id. at 6, 1974-3 C.B. (Supp.) at 241. As part of ERISA, Congress included section 7476 to establish a judicial forum under which an employer could challenge respondent's determination (or refusal to make a determination) with respect to the qualification of its employee benefit plan. Id. at 107, 1974-3 C.B. (Supp.) at 342. This section provides as follows: SEC. 7476. DECLARATORY JUDGMENTS RELATING TO THE QUALIFICATION OF CERTAIN RETIREMENT PLANS. (a) Creation of Remedy. -- In a case of actual controversy involving -- (1) a determination by the Secretary with respect to the initial qualification or continuing qualification of a retirement plan under subchapter D of chapter 1, * * *
* * * upon the filing of an appropriate pleading, the Tax Court may make a declaration with respect to such initial qualification or continuing qualification. Any such declaration shall have the force and effect of a decision *109 of the Tax Court and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification includes any revocation of or other change in a qualification. (b) Limitations. -- (1) Petitioner. -- A pleading may be filed under this section only by a petitioner who is the employer, the plan administrator, an employee who has qualified under regulations prescribed by the Secretary as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service, or the Pension Benefit Guaranty Corporation. (2) Notice. -- For purposes of this section, the filing of a pleading by any petitioner may be held by the Tax Court to be premature, unless the petitioner establishes to the satisfaction of the court that he has complied with the requirements prescribed by regulations of the Secretary with respect to notice to other interested parties of the filing of the request for a determination referred to in subsection (a). (3) Exhaustion of Administrative Remedies. -- The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted *110 administrative remedies available to him within the Internal Revenue Service. A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made. (4) Plan Put Into Effect. -- No proceeding may be maintained under this section unless the plan (and, in the case of a controversy involving the continuing qualification of the plan because of an amendment to the plan, the amendment) with respect to which a decision of the Tax Court is sought has been put into effect before the filing of the pleading. A plan or amendment shall not be treated as not being in effect merely because under the plan the funds contributed to the plan may be refunded if the plan (or the plan as so amended) is found to be not qualified. (5) Time for Bringing Action. -- If the Secretary sends by certified or registered mail notice of his determination with respect to the qualification of the plan to the persons referred to in paragraph (1) (or, in the case of employees *111 referred to in paragraph (1), to any individual designated under regulations prescribed by the Secretary as a representative of such employee), no proceeding may be initiated under this section by any person unless the pleading is filed before the ninety-first day after the day after such notice is mailed to such person (or to his designated representative, in the case of an employee).
(c) Retirement Plan. -- For purposes of this section, the term "retirement plan" means -- (1) a pension, profit-sharing, or stock bonus plan described in section 401(a) or a trust which is part of such a plan, or (2) an annuity plan described in section 403(a).
Thus, following the passage of ERISA, an employer may file a petition with the Court and request that we make a declaratory judgment with respect to the initial or continued qualification of a retirement plan, or whether the qualification of such a plan is revoked. Sec. 7476(a). Our judgment in such a case may address the status of the Plan under section 401(a), and the status of the accompanying trust. Id.; sec. 7476(c)(1). Our power to make such a declaratory judgment, however, is subject to five jurisdictional limitations. *112 Sec. 7476(b); Rule 210(c). Any of these limitations, if not satisfied, will prevent us from making a declaratory judgment, and will result in a dismissal of the underlying petition. Rule 210(c); McManus v. Commissioner, 93 T.C. 79, 84 (1989). In the instant case, the petition includes sufficient information from which we may easily determine that four of the five jurisdictional limitations under section 7476(b) have been satisfied. First, the petition states that Hamlin Development Co., the employer, is the party that has petitioned the Court for a declaratory judgment. Thus, petitioner in this case is a proper party. Sec. 7476(b)(1). Second, the petition states, and respondent agrees, that petitioner is the only "interested party", within the meaning of section 7476(b)(2) and the regulations thereunder. In addition, the petition contains sufficient facts for us to agree. Thus, the second jurisdictional limitation, notice, is also not at issue. Sec. 7476(b)(2); sec. 1.7476-1, Income Tax Regs.; see also Efco Tool Co. v. Commissioner, 81 T.C. 976, 978 (1983). Third, based on the facts in the petition and the attachments *113 thereto, we easily discern that the Plan has been put into effect before the filing of the petition. Thus, this third jurisdictional limitation is also satisfied. Sec. 7476(b)(4). Fourth, the petition was filed on April 30, 1990, a date that is within 91 days after the day respondent mailed petitioner the final revocation letter with respect to the Plan (January 31, 1990). Accordingly, this jurisdictional limitation is also satisfied. Sec. 7476(b)(5). We now turn to and consider the fifth jurisdictional limitation -- section 7476(b)(3), exhaustion of administrative remedies available within the Service. Although the briefs of neither party address this jurisdictional limitation, apparently because respondent concedes that we have jurisdiction, we are a court of limited jurisdiction and our jurisdiction may not be invoked by the consents or concessions of the parties. B.H.W. Anesthesia Foundation, Inc. v. Commissioner, 72 T.C. 681, 682 n.2 (1979). Thus, having concluded that the other four jurisdictional limitations are satisfied, we must make an independent review of the record to ascertain that petitioner exhausted its administrative remedies *114 within the Service before it filed the petition. Id.
Petitioner does not allege in its petition that it exhausted administrative remedies within the Service before filing the petition. In fact, petitioner alleges that all such remedies have not been exhausted. Thus, at first blush, it appears that the petition must be dismissed because the jurisdictional limitation under section 7476(b)(3) is not satisfied. Rule 211(c)(2)(B) (employer's petition for declaratory judgment must contain a paragraph stating that petitioner has exhausted all administrative remedies within the Service); Efco Tool Co. v. Commissioner, supra at 979 (Court's jurisdiction may be invoked under section 7476 only if the petition contains sufficient information from which we can conclude that petitioner has exhausted administrative remedies within the Service). However, the petition states, and respondent agrees, that respondent mailed a final revocation letter to petitioner on January 31, 1990. Respondent's mailing of this final revocation letter is considered the last step in the administrative process, and petitioner is deemed to have exhausted its administrative *115 remedies within the Service for purposes of the jurisdictional limitation of section 7476(b)(3). Efco Tool Co. v. Commissioner, supra at 981. Thus, we conclude that all five jurisdictional limitations are satisfied, and we may make a declaratory judgment on the continued qualification of the Plan and the Trust. [5]
Petitioner's Failure to Amend the Written *116 Plan
A trust that forms part of a pension or other retirement type plan is a qualified trust entitled to preferential tax treatment under the Internal Revenue Code if the trust meets the requirements of section 401(a). [6] *117 The employer adopting such a retirement plan and the employees that the plan covers are also granted preferential tax treatment. [7] This special treatment for the qualifying trust, employer, and employee is appropriately designed to foster the establishment and growth of nondiscriminatory retirement plans. See, e.g., H. Rept. 93-807, at 107 (1974), 1974-3 C.B. (Supp.) 236, 342-343; H. Rept. 2333, 77th Cong., 2d Sess. 50-51, 103-105 (1942), 1942-2 C.B. 372, 413, 450-452. The Service generally will issue a determination letter stating whether an existing retirement *118 plan, or an amendment to such a plan, qualifies for this preferential tax treatment. See, e.g., Rev. Proc. 80-30, 1980-1 C.B. 685, superseded by Rev. Proc. 91-10, 1991-1 C.B. 439. [8] However, in order to receive this preferential tax treatment, it is not necessary that a determination letter be received from the Service stating that the plan qualifies under section 401(a). As a practical matter, an employer usually requests such a determination because a favorable determination from the Service allows the employer to be assured that its contributions to the plan will be deductible. In addition, a favorable determination allows the employees that participate in the plan to be assured that the contributions the employer makes on their behalf, and the income earned in the trust, will not be taxable to them until distributed. *119 This assurance is not absolute, however, because Congress has given respondent broad authority to revoke a determination letter retroactively. Sec. 7805(b); see also Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184 (1957). Despite this broad grant of congressional authority, respondent has limited the ability to exercise this power. Specifically, section 601.201(1)(5), Statement of Procedure Rules provides: Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to *120 his detriment.
In the instant case, respondent issued petitioner a favorable determination letter in 1983, stating that the Plan qualified under section 401(a), effective with the first plan year beginning after March 31, 1981. The year before this letter was issued, 1982, Congress had enacted TEFRA. Respondent's favorable letter specifically states that the determination (and favorable letter) do not pertain to any provisions included in TEFRA. TEFRA substantially and extensively changed the requirements that must be met for an employee benefit plan, such as the Plan, to constitute a qualified plan under section 401(a). See generally TEFRA, tit. II, subtit. C, 96 Stat. 505. For example, TEFRA includes provisions that: (1) Reduce the dollar limit for annual benefits under a defined benefit plan, TEFRA sec. 235, 96 Stat. 505; (2) reclassify certain loans to participants as distributions, TEFRA sec. 236, 96 Stat. 509; (3) apply special rules to topheavy plans, TEFRA sec. 240, 96 Stat. 514; and (4) require plans to include certain rules on mandatory distributions, TEFRA sec. 242, 96 Stat. 521. Two years after TEFRA, or, in other words, 1 year after petitioner received its favorable *121 determination letter from respondent, Congress enacted DEFRA and REA. Like TEFRA, these two acts substantially and dramatically amended the requirements for an employee benefit plan to be considered a qualified plan under section 401(a). See generally REA, 98 Stat. 1426; DEFRA tit. V, 98 Stat. 854. [9] For example, DEFRA includes provisions that: (1) Amend the distribution requirements that were previously changed by TEFRA, DEFRA sec. 521, 98 Stat. 865; and (2) amend the rules that apply to determine if a plan is topheavy, DEFRA sec. 524, 98 Stat. 872. Examples of provisions under REA include amendments that: (1) Lower, from 25 to 21, the permissible age limits of employees that may be required to participate in a plan, REA sec. 202(a), 98 Stat. 1436; (2) substantially change the break-in-service rules, REA sec. 202(c), (d), and (e), 98 Stat. 1437-1438; and (3) require that participants be notified of any benefits which are forfeitable if the participant dies before a certain age, REA sec. 206, 98 Stat. 1449. *122 With respect to the changes that are included in TEFRA, DEFRA, and REA (hereinafter these three Acts are collectively referred to as the Acts), the various effective dates by which a qualified plan is generally required to implement these changes are set forth in the respective Act. [10] *123 In addition, section 401(b) allows an employer to make certain retroactive changes in its plan to otherwise satisfy these effective date requirements in a timely manner. [11] See also sec. 1.401(b)-1, Income Tax Regs. Further, in an effort to accommodate employers in making the substantial changes contained in the Acts, the Service prescribed rules that further extended these effective dates from the dates listed in the Acts and section 401(b). [12]
*124 In petitioner's case, based on respondent's guidelines, the compliance dates for each affected plan year and the applicable law are as follows: Plan Year
Adoption Date
Compliance Date
Applicable Law
3/31/85
N/A
6/30/86
TEFRA
3/31/86
N/A
6/30/86
DEFRA/REA
3/31/87
N/A
3/31/87
DEFRA/REA
3/31/88
N/A
3/31/88
DEFRA/REA
3/31/89
N/A
3/31/89
DEFRA/REA
The record does not contain even a scintilla of evidence that, with the exception of the second amendment to the Trust agreement, petitioner ever made written amendments to the Plan following the enactment, or as a result, of these Acts. [13] Petitioner contends, however, that the operation of the Plan, in substance, is in total compliance with the legislative intent of section 401(a), as amended by the Acts. In other words, petitioner contends, the Plan originally received respondent's approval and no provision in the Acts actually affected the operation of the Plan. *125 The requirements that a plan must meet for qualification under section 401(a) are extremely technical and quite stringent. Although the changes included in the Acts could be construed by some employers, such as petitioner, to be voluminous and unnecessary for their particular plan, Congress has decided that these changes are necessary in the retirement plan area and we do not second guess its wisdom. Petitioner did not amend the written Plan to comply with the Acts. Thus, the provisions in the written Plan that should have been amended are defective. These defects are not cured merely because the operation of the Plan may have complied with the intent of the Acts and section 401(a). Although a defective provision in the written Plan may not become operational, as petitioner has contended is the case at hand, this does not mean that the Plan meets the requirements of section 401(a). Tionesta Sand & Gravel, Inc. v. Commissioner, 73 T.C. 758, 764 (1980), affd. without published opinion 642 F.2d 444 (3d Cir. 1981); see also Gillis v. Commissioner, 63 T.C. 11, 17 (1974) (notwithstanding good *126 faith intentions of taxpayer to meet statutory requirements for deduction of contributions to taxpayer's profit-sharing plan, Court refused to ignore plain meaning of statute and hold that substantial compliance with statute is enough; thus, deduction not allowed because statutory requirements were not actually met). For a plan to be qualified under section 401(a), not only its operation, but its written terms as well, must meet the statutory requirements thereunder. Buzzetta Construction Corp. v. Commissioner, 92 T.C. 641, 646 (1989); Ludden v. Commissioner, 68 T.C. 826, 831 (1977), affd. 620 F.2d 700 (9th Cir. 1980); Quality Brands, Inc. v. Commissioner, 67 T.C. 167, 174-175 (1976). See also sec. 1.401-1(b)(3), Income Tax Regs.
In making its contention that the Plan's compliance with section 401(a), in substance, trumps the Plan's noncompliance with section 401(a), in form, petitioner has misinterpreted the correct standard for evaluating the qualification of a plan under that section. The standard is not what in fact occurred, as petitioner contends, but *127 what might have occurred. In other words, a plan does not meet the requirements of section 401(a) merely because, in hindsight, the operation of a plan met the statutory requirements under section 401(a). Such a plan must initially meet the formal requirements of section 401(a), and must be continually amended to comport with subsequent changes to the statutory requirements. As mentioned above, a plan determined to be qualified by respondent may retroactively lose that qualification if the plan is not amended to comply with a change in the applicable law. Sec. 601.201(1)(5)(iii), Statement of Procedural Rules. Thus, it is incumbent upon petitioner to stay abreast of any change in the law, such as through legislation, regulations, or rulings, that could affect respondent's initial determination. We find it important to note that the Acts fundamentally changed the qualification requirements for retirement plans under section 401(a). The breadth of the provisions contained in the Acts emphasizes that compliance with the form of the Acts is not a hollow exercise nor results in merely superficial changes to the governing documents of a qualified plan. The changes in the Acts are *128 extensive and fundamental. We also perceive the changes as examples of the constant congressional activity in the retirement plan area in order to expand employee rights and otherwise maximize the safety of the participants against, for example, the detrimental operation of a plan. [14]Engineered Timber Sales, Inc. v. Commissioner, 74 T.C. 808, 823 (1980). Thus, among other things, we perceive compliance with the form of the Acts as another important protection for employee benefits under qualified plans. *129 We must also note that petitioner's position would undercut the necessity of having a written plan in order to qualify under section 401(a). See, e.g., ERISA sec. 402(a)(1), 88 Stat. 875; [15] *130 see also Engineered Timber Sales, Inc. v. Commissioner, supra at 823; sec. 1.401-1(a)(2)(i), Income Tax Regs.[16] This written plan requirement, in part, evidences Congress' belief that a written plan is necessary so that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." H. Conf. Rept. 93-1280, at 297 (1974), 1974-3 C.B. 415, 458. In addition, "a written plan is required so the employees may know who is responsible for operating the plan." Id. at 297, 1974-3 C.B. at 458. Thus, paralleling this congressional intent, we again stress that employers must timely update their written plans by making whatever amendments are required. If an employer does not, then, for example, an employee examining the plan documents could not determine exactly what his or her rights and obligations are under the plan, nor who is responsible for operating the Plan. Accordingly, we conclude that the enactment of the Acts necessitated the amendment of petitioner's written Plan within the specified time periods. In so concluding, we note that the only two cases cited by petitioner to support its contention that substance takes precedence over form in the retirement plan area, Lansons, Inc. v. Commissioner, 622 F.2d 774 (5th Cir. 1980), affg. 69 T.C. 773 (1978), and Trenton Times Corp. v. United States, 361 F. Supp. 222 (D.N.J. 1973), are easily distinguished on their facts and do not deserve discussion. Because petitioner did not *131 make the amendments to the written Plan as required under TEFRA, DEFRA, and REA, the Plan does not meet the requirements of section 401(a). In addition, as a result therefrom, the Trust is not tax exempt under section 501(a). Mitigating Factors
Having concluded that the Plan did not comply with the requirements of section 401(a), we now consider whether this noncompliance can be excused by the illness of petitioner's sole shareholder and the Plan's trustee, Faulkender. At the outset, we note that we are a court of law and, as such, cannot ignore the plain meaning of statutory language to achieve a more "equitable" result. Congress has established the respective effective dates for compliance. While respondent is authorized to extend these dates, see sec. 7805(a), we are not. Neither the language of section 401(a), nor the rules or regulations thereunder, excuse petitioner's noncompliance in the circumstances of this case. Ludden v. Commissioner, 68 T.C. 826, 831-833 (1977), affd. 620 F.2d 700 (9th Cir. 1980); Quality Brands, Inc. v. Commissioner, 67 T.C. 167, 174-175 (1976); Myron v. United States, 382 F. Supp. 590, 598 (C.D. Cal. 1974), *132 affd. 550 F.2d 1145 (9th Cir. 1977); see also Gillis v. Commissioner, 63 T.C. 11, 17 (1974) (Court refused to ignore the plain language of the statute despite good faith intentions of petitioners).[17]
Faulkender became ill in the spring of 1986. This was almost 4 years after the enactment of TEFRA and almost 2 years after *133 the enactment of DEFRA and REA. In the interim, the Service provided much guidance on the need to comply with the Acts, and the consequences of noncompliance. Respondent's favorable determination letter also contained a specific reference to the need to comply with TEFRA. In addition, IRS Pub. 794, Rev. Aug. 1982, which was referenced in respondent's determination letter as an enclosed document, states that "A favorable determination letter may no longer apply if there is a change in a statute, a regulation, or a revenue ruling applicable to the qualification of the plan. * * * If the letter no longer applies to the plan, the plan must be amended to comply with the new requirements in order to maintain its qualified status." Thus, petitioner was on notice of the need to comply with the Acts long before the illness of Faulkender, the Plan's trustee. In addition, even after this illness, National continued to provide actuarial reports based on information provided by petitioner and Faulkender. Thus, based on the record, it appears that petitioner had the resources and ability to timely amend the Plan to make it consistent with the Acts. Petitioner also contends that a disqualification *134 of the Plan should be avoided because petitioner delegated its responsibility to administer the Plan to National, a third-party actuarial firm, and fully relied on that firm to conform the Plan to the provisions of the Internal Revenue Code. We reject this contention for the same reasons as above, and because petitioner cannot delegate away its ultimate responsibility for keeping the Plan qualified under section 401(a). We also note that the record is barren of any information to support petitioner's contention. Thus, petitioner did not even begin to carry its burden of proof with respect to this issue. Rule 217(c). In fact, the record appears to undercut petitioner's claim that the administration of the Plan was under the exclusive control of National. Specifically, the actuarial certification letters that were prepared by National expressly state that National is relying on information on the employees prepared by petitioner, and information on the Plan assets prepared by Faulkender. Thus, based on the record, it strongly appears that petitioner and Faulkender, the Plan's trustee, were more than mere observers of the administration of the Plan. To reflect the foregoing, *135 Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Neither petitioner nor respondent has presented any separate arguments with respect to the exemption of the Trust under sec. 501(a). Such exemption does not always follow the qualification of a plan under sec. 401(a). See secs. 502 and 503. However, the parties do not dispute that the exemption of the Trust under sec. 501(a) would automatically flow from the qualification of the Plan under sec. 401(a), and the Trust would not qualify under sec. 501(a) if the Plan does not qualify under sec. 401(a)↩.
3. In its brief, petitioner requested that the Court rule that petitioner is entitled to a deduction for the contributions that it made to the Plan in the years at issue. Nothing in the petition indicates that respondent has issued a notice of deficiency to petitioner with respect to this matter. Thus, we decline to resolve this matter because we do not have jurisdiction to do so. Sec. 6213(a); Rule 13(a).↩
4. This amendment was the second amendment to the Trust agreement. Based on the administrative record in this case, only two amendments were made to this agreement. The first amendment↩ was made on Feb. 18, 1982.
5. Although the petition failed to comply with the form and content of Rule 211(c)(2)(B), we also conclude that the taxpayer made a conscientious effort to comply with our Rules, and intended that the document it filed be a petition asking the Court to make a declaratory judgment with respect to the Plan. Accordingly, we believe that this is the type of case for which we should exercise our discretion to excuse this noncompliance in order to effect jurisdiction. Castaldo v. Commissioner, 63 T.C. 285, 287 (1974); Carstenson v. Commissioner, 57 T.C. 542, 546↩ (1972).
6. SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS. (a) Requirements for Qualification. -- A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section -- (1) if contributions are made to the trust by such employer, or employees, or both, or by another employer who is entitled to deduct his contributions under section 404(a)(3)(B) (relating to deduction for contributions to profit-sharing and stock bonus plans), for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan; (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries * * *; (3) if the plan of which such trust is a part satisfies the requirements of section 410 (relating to minimum participation standards); and (4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are -- (A) officers, (B) shareholders, or (C) highly compensated.↩
7. In general, three favorable tax consequences flow from a qualified trust. First, in connection with the taxation of the plan, income earned by a plan that meets the requirements of sec. 401(a) is not subject to taxation while the plan's assets are held in a tax-exempt trust. Secs. 401(a), 501(a). Second, from the employer's point of view, subject to certain limitations, the employer receives an immediate tax deduction for contributions to a qualified plan. Sec. 404(a). Third, with respect to the employees, employees are not taxed on any employer contributions that are made on their behalf until the benefits are actually distributed (or otherwise made available) to them from the Plan. Sec. 402(a). By comparison, if a plan does not meet the requirements of sec. 401(a)↩, the earnings of the plan are subject to tax, employer deductions for contributions may be deferred or eliminated, and employees are taxed on the value of employer contributions under the rules of sec. 83. See, e.g., sec. 402(b).
8. For the years at issue, Rev. Proc. 80-30 set forth the general procedures under which the Service would issue a determination letter with respect to the qualification of an employee benefit plan. By comparison, the recent practice of the Service has been to publish an annual revenue procedure that announces the Service's current procedures for issuing a determination letter with respect to an employee plan. See, e.g., Rev. Proc. 93-6, 1993-1 I.R.B. 135, superseding Rev. Proc. 92-6, 1992-1 I.R.B. 105↩, for requesting determination letters after Jan. 3, 1993.
9. Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, in particular, was enacted primarily to: improve the delivery of retirement benefits and provide for greater equity under private pension plans for workers and their spouses and dependents by taking into account changes in work patterns, the status of marriage as an economic partnership, and the substantial contribution to that partnership of spouses who work both in and outside the home, * * *.↩
REA pmbl., 98 Stat. 1426.
10. The effective date provisions for sections of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, tit. II, subtit. C, 96 Stat. 505, generally are contained in the respective section. Likewise, the effective date provisions for sections of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, tit. V, 98 Stat. 854, generally are contained in the respective section. Sec. 302 of REA, 98 Stat. 1451, generally contains the effective date provisions for REA.↩
11. Sec. 401(b) provides: (b) Certain Retroactive Changes in Plan. -- A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes of the whole of such period.↩
12. In order to satisfy TEFRA, employers were required to amend their plans by the end of the appropriate remedial amendment period determined pursuant to sec. 401(b) and sec. 1.401(b)-1, Income Tax Regs. See, e.g., Notice 85-5, 1985-1 C.B. 427. This deadline for compliance was extended when the Service announced that the remedial amendment period under sec. 1.401(b)-1, Income Tax Regs., would be applied as if an employer requested and received the automatic extension for filing tax returns under sec. 6081, regardless of whether such an extension for time had actually been filed. Id. The Service also announced that this deemed extension rule would be applied to changes in the top heavy requirements included in DEFRA. Id. at 427. With respect to TRA (other than the top heavy provisions mentioned above) and REA, employers were required to adopt those amendments no later than the last day of the first plan year beginning on or after January 1, 1985. See, e.g., id. at 427. Later, however, the Service announced a procedure under which an employer could receive an extension, until Nov. 1, 1985, of the time for compliance with TRA and REA, as well as TEFRA. News Release IR-85-89 (Aug. 30, 1985). In this announcement, the Service also stated that tax sanctions apply to plans that do not meet the compliance dates for TEFRA, TRA, and REA. Id. Subsequently, this Nov. 1, 1985, date was extended to June 30, 1986, with the Service stressing that a plan would not qualify under sec. 401(a) if the plan did not comply with TEFRA, TRA, and REA. Notice 86-3, 1986-1 C.B. 388; Announcement 86-60, 1986-19 I.R.B. 17 (May 12, 1986). After June 30, 1986, employers could no longer amend individual plans to comply with the provisions of TEFRA. However, employers could still receive retroactive qualified status for their plans by adopting a master or prototype plan. Notice 86-3, 1986-1 C.B. 388. This opportunity to receive such retroactive status by adopting a master or prototype plan did not expire until Jan. 14, 1988. Notice 87-80, 1987-2 C.B. 388↩.
13. The record in the instant case does not include the written Plan. Thus, we cannot determine whether the second amendment, in and of itself, was enough to conform the written Plan with the Acts. We doubt, however, that it was. In particular, we find it very unlikely that petitioner drafted the Plan in 1980 with such precision and certainty as to anticipate all the voluminous changes that are included in the Acts, enacted some 2 to 4 years after petitioner established the Plan. In any event, the record contains only the slightest bit of information to support petitioner's burden of proving that respondent erred in determining that the Plan does not meet the requirements of sec. 401(a)↩.
14. In general, the increased congressional activity in the retirement plan area began with the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829. As Congress noted in its findings and declaration of policy under ERISA: (a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; * * * that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; * * * (b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.↩
ERISA sec. 2, 88 Stat. 829, 832-833.
15. ERISA sec. 402(a)(1), 88 Stat. 875, provides: "every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." Although this provision is contained in the labor title (Tit. I) of ERISA, the provision generally applies to any employee benefit plan. ERISA sec. 4(a), 88 Stat. 875.↩
16. Sec. 1.401-1(a)(2)(i), Income Tax Regs., provides that a qualified pension plan under sec. 401(a) is "a definite written plan↩ and arrangement which is communicated to the employees and which is established and maintained by an employer * * * to provide for the livelihood of the employees or their beneficiaries after the retirement of such employees through the payment of benefits determined without regard to profits". [Emphasis added.]
17. We recognize that this Court, on occasion, has given retroactive effect to curative amendments that were not made within the statutory timeframe. See Aero Rental v. Commissioner, 64 T.C. 331 (1975), and its progeny. In those instances, however, the employer exercised due diligence by amending its plan retroactively to eliminate all objectional provisions prior to petitioning the Court. The record in the instant case, by comparison, suggests that the written Plan has never been amended to comply with the Acts. Thus, the rationale of Aero Rental↩ and its progeny are inapplicable to the instant case.