JOSEPH P. CLAWSON, M.D., INC., P.S., PROFIT AND PENSION TRUSTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clawson v. Commissioner
Docket No. 8289-91R
United States Tax Court
T.C. Memo 1993-174; 1993 Tax Ct. Memo LEXIS 171; 65 T.C.M. (CCH) 2452; 17 Employee Benefits Cas. (BNA) 1193; April 19, 1993, Filed *171 An order of dismissal for lack of jurisdiction will be entered. For petitioners: Joseph P. Clawson (trustee). For respondent: Shirley M. Francis. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined that the money purchase pension and profit-sharing plans (plans) of Joseph P. Clawson, M.D., Inc., P.S., did not meet the tax qualification requirements of section 401(a) [1] for the plan year ending August 31, 1987 (plan year 1987), and that the trusts that constitute parts of each of the respective plans were therefore not exempt under section 501(a) from Federal income taxation for that year. The trusts alone are petitioners, but for convenience they will be referred to in the singular simply as "petitioner", and at times the word "petitioner" will be used to include the plans also. Petitioner invokes *172 the jurisdiction of this Court pursuant to section 7476 to obtain a declaratory judgment as to whether the plans and trusts meet the requirements of sections 401(a) and 501(a), respectively. [2] The case was submitted on the basis of a stipulated administrative record. The disqualification of the plans for the year at issue rests upon the Commissioner's determination that the plans were not timely amended so as to be brought into compliance with the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, enacted September 3, 1982, the Tax Reform Act of 1984 (TRA), Pub. L. 98-369, 98 Stat. 494, enacted July 18, 1984, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, enacted August 23, 1984. [3]
*173 Petitioner's principal place of business was in Kelso, Washington, when the petition with this Court was filed on its behalf. The petition was filed by Joseph P. Clawson, M.D., trustee and plan administrator. Joseph P. Clawson, M.D., Inc., P.S. (the employer) was a Washington professional service corporation with a principal place of business in Kelso, Washington, during the 1987 plan year. The employer established the profit-sharing plan and trust on October 1, 1971, and the money purchase pension plan and trust on September 1, 1974, respectively. Both were amended August 31, 1976 (effective September 1, 1976) in order to comply with legislative changes enacted as part of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, enacted September 2, 1974. No other amendments were made to the plans comprising petitioner until April 22, 1988, when the employer adopted amendments to petitioner in order to bring it into compliance with the additional qualification requirements in section 401(a) that were added by TEFRA, TRA, and REA. [4]
*174 However, the deadline as finally extended by the IRS for amending plans to comply with TEFRA was June 30, 1986. Notice 86-3, 1986-1 C.B. 388; Announcement 86-60, 1986-19 I.R.B. 17. And the final deadline for conforming individually designed plans to the requirements of TRA and REA was the last day of the plan year in which the qualification requirement was to become effective (in this case August 31, 1987). Notice 86-3, supra at 388-389; Announcement 86-60, supra. [5] *175 Thus, the deadline for making the amendments required by TEFRA, TRA, and REA had already passed prior to the time that the employer updated the plans on April 22, 1988. [6]
On November 5, 1990, the District Director mailed to the employer a letter determining that petitioner failed to meet the requirements for tax qualification set forth in section 401(a) for the 1987 plan year. Although it had been informed in that letter of the right to appeal within 30 days, petitioner did not file any such administrative appeal from that determination. Thereafter, on February 7, 1991, a final nonqualification letter was issued to the employer restating the conclusion that the plans were not tax-qualified under section 401(a), obviously because they were not amended to comply with TEFRA, TRA, and REA before the applicable deadline. The letter also indicated that by failing to file an administrative appeal with the IRS, the employer (acting on petitioner's behalf) had not exhausted available administrative remedies and might thereby be precluded from seeking a declaratory judgment *176 from this Court, pursuant to section 7476. Although we would probably conclude that the Commissioner must be sustained on the merits, [7] we are satisfied that the Court is without jurisdiction in this case. *177 In respondent's answer to the petition it is alleged that "petitioner has failed to exhaust administrative remedies as required by I.R.C. section 7476(b)(3)", but respondent did not present any argument on brief in support of the allegation. [8] However, since this Court's jurisdiction is limited, it is our obligation to make an independent review of the matter, bearing in mind that the burden of proof is upon petitioner, regardless of the failure of either party to argue the point or even where jurisdiction may have been conceded by the parties. See B.H.W. Anesthesia Foundation v. Commissioner, 72 T.C. 681, 682 n.2 (1979). Upon such review, we find that jurisdiction is lacking in this case. Although section 7476(a) gives this Court jurisdiction to make a declaratory judgment with respect to qualification *178 of a retirement plan, such jurisdiction is strictly limited in certain respects, including the following in section 7476(b)(3): (3) EXHAUSTION OF ADMINISTRATIVE REMEDIES. -- The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service. * * *
And the requirement of exhaustion of administrative remedies is reflected in our Rule 211(e)(4) which requires that the petition in an exempt organization action shall contain a statement that the petitioner "has exhausted its administrative remedies within the Internal Revenue Service". The petition in this case contains no such statement. However, of greater significance, there is no dispute that petitioner did not in fact exhaust administrative remedies available to it within the IRS after the District Director's initial letter of November 5, 1990, determining that it failed to qualify under section 401(a). [9] Certainly, petitioner has not carried its burden to show otherwise. Plainly, petitioner's failure to exhaust administrative remedies would seem to be an *179 end to the matter of jurisdiction. Failure to exhaust administrative remedies has been stated or held to be fatal to jurisdiction in a number of cases involving that requirement in section 7476 and its counterpart in section 7428 involving the identical requirement in the area of exempt organizations. McManus v. Commissioner, 93 T.C. 79, 88 (1989); Prince Corp. v. Commissioner, 67 T.C. 318 (1976); see also Gladstone Foundation v. Commissioner, 77 T.C. 221, 230-231 (1981); Hawes v. Commissioner, 73 T.C. 916, 918 (1980); Thompson v. Commissioner, 71 T.C. 32, 35 (1978). *180 Indeed, in Change-All Souls Housing Corp. v. United States, 229 Ct. Cl. 380, 386, 671 F.2d 463, 467 (1982), the Court of Claims rejected the contention that failure to file a protest (an administrative remedy available there) did not foreclose jurisdiction, even though it was argued on behalf of the taxpayer that such protest would have been "futile" in that case. In response to that contention, the Court emphasized the importance of the exhaustion requirement, pointing out that the protest "might have persuaded the Service to change its view." Id. We similarly find no escape from the conclusion that the statute explicitly prevents us from assuming jurisdiction in this case. The result herein is not inconsistent with Efco Tool Co. v. Commissioner, 81 T.C. 976 (1983), where a distinction was drawn between cases involving revocation and those involving initial qualification. [10] It was noted there that a revocation generally follows an audit by the IRS, whereas an initial qualification ruling is based upon facts which are supplied by the applicant. The relevance of the distinction thus rests upon the *181 notion that the administrative record is of lesser importance in revocation cases, where the IRS relies upon its own investigation and not upon facts presented by the applicant which form the basis for the administrative record. It was then concluded in Efco Tool, a revocation case, that since the IRS could have obtained sufficient facts in the course of its own investigation upon which to issue a final revocation letter, the issuance of such final revocation letter was a sufficient basis for the assumption of jurisdiction by this Court -- regardless of whether an administrative appeal had been taken from the District Director's preliminary adverse determination. The opinion in Efco Tool concluded that "the purposes of the exhaustion requirement have been satisfied once the Internal Revenue Service has issued a final revocation letter and the petitioner shall be deemed to have exhausted its administrative remedies." 81 T.C. at 981. The present case, however, presents an entirely different picture. Here, the question before the IRS was not whether the original plans satisfied the statutory requirements for qualification. Rather, the critical *182 issue was whether the new, revised plans qualified -- an issue comparable to what is present in cases involving the determination of initial qualification. Exhaustion of administrative remedies was therefore just as essential here as in any case of initial qualification. To hold otherwise would eviscerate section 7476(b)(3). Whatever may be thought of the exception read into section 7476(b)(3) by Efco Tool, or whether Efco Tool squares with the opinion of the Court of Claims in Change-All Souls Housing Corp. v. United States, supra, these are matters that need not be considered here. The point is that the present case is sharply distinguishable from Efco Tool. [11]
*183 We conclude that there is an absence of jurisdiction here. Accordingly, An order of dismissal for lack of jurisdiction will be entered. Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Since the trusts' exemption under sec. 501(a) follows automatically here from qualification under sec. 401(a), only sec. 401(a) need be considered.↩
3. The effective dates under TEFRA and TRA for the various legislative changes affecting pension plans were set forth in the individual statutory provisions under each of those Acts. While each of those individual provisions set forth their own separate effective dates, most of the TEFRA and TRA provisions were made effective for years beginning after December 31, 1983, and December 31, 1984, respectively. TEFRA, secs. 235-250, 96 Stat. 505-529; TRA, secs. 521-529, 98 Stat. 865-877. Most of the changes under REA were also made effective for years beginning after December 31, 1984. REA, sec. 302, 98 Stat. 1451. The deadlines for amending plans to conform with the various qualification requirements imposed by TEFRA, TRA, and REA have, however, been extended by the IRS to later dates, as explained hereinafter.↩
4. Petitioner conceded both on brief and in documents made part of the administrative record that the amendments required by TEFRA, TRA, and REA were not made until April 22, 1988.↩
5. The above statement describes the rule for plans with "compliance dates", i.e., dates for complying with TRA and REA, falling on or after June 30, 1986. Petitioner's compliance date for the year at issue is Aug. 31, 1987, and, therefore falls within this rule. The final deadline for plans whose compliance date was before June 30, 1986, was extended to June 30, 1986, by Announcement 86-60, 1986-19 I.R.B. 17↩.
6. For a discussion of the applicable deadline dates for amending plans to comply with TEFRA, TRA, and REA, see Stark Truss Co. v. Commissioner, T.C. Memo 1991-329↩ n.3.
7. Petitioner does not challenge the validity of the applicable deadline or dispute that the revised plans which were intended to comply with the requirements of TEFRA, TRA, and REA, were submitted after the final deadline had passed. But it seeks relief primarily because there were alleged mitigating circumstances, including the fact that it had reasonably relied upon prior counsel, that the plans were promptly revised to be in compliance by new counsel, that the IRS had not given it warning of the necessity to modify the plans before the deadline notwithstanding extensive correspondence with the IRS, and that the plans in any event functioned properly. Reliance on such grounds has been held to be unavailing. See, e.g., Stark Truss Co. v. Commissioner, T.C. Memo. 1991-329; Mills, Mitchell & Turner v. Commissioner, T.C. Memo. 1993-99; Hamlin Development Co. v. Commissioner, T.C. Memo. 1993-89; Kollipara Rajsheker, M.D., Inc. v. Commissioner, T.C. Memo. 1992-628↩.
8. The IRS position in the answer was in accord with the Internal Revenue Manual, 5 Administration, Internal Revenue Manual (CCH), exhibits 7(11)83 and 7(13)63(8) at pp. 22,873-4, 23,464↩.
9. Among the available administrative remedies was an appeal of the District Director's determination to the Appeals Office. See 26 C.F.R. sec. 601.201(0)(10)(i)(c↩), Statement of Procedural Rules. Also available to petitioner was a request that the matter be referred by the District Director to the national office of the IRS.
10. See also McManus v. Commissioner, 93 T.C. 79, 85-86↩ (1989).
11. This case is similarly distinguishable from Hamlin Development Co. v. Commissioner, T.C. Memo. 1993-89, also a revocation case, which relied upon Efco Tool Co. v. Commissioner, 81 T.C. 976↩ (1983).