RONALD R. PAWLAK, P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ronald R. Pawlak, P.C. v. Commissioner
Docket Nos. 1745-94R, 1749-94R[1]
United States Tax Court
T.C. Memo 1995-7; 1995 Tax Ct. Memo LEXIS 7; 69 T.C.M. (CCH) 1603; January 10, 1995, Filed *7 Decisions will be entered for respondent. P, a corporation, established profit-sharing and pension plans (Plans) in July 1970. In September 1984, P received favorable determination letters from R stating that P's Plans were qualified under sec. 401(a), I.R.C. The letters also stated that R had reserved judgment on the Plans' compliance with the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494. In October 1993, R mailed P final revocation letters stating that the favorable determination letters were retroactively revoked for the Plans' years ended June 30, 1986, 1987, 1988, and 1989. R determined from an examination of those Plans' years that P did not timely amend the Plans to comply with DEFRA and the Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426 (collectively the Acts). Held: The Court has jurisdiction under sec. 7476, I.R.C., to make a declaratory judgment on the qualification of the Plans under sec. 401(a), I.R.C., and the tax exemption of the accompanying trusts (Trusts) under sec. 501(a), I.R.C.Held, further, the Plans are not qualified plans under sec. 401(a), I.R.C., and the Trusts are not tax exempt under sec. 501(a), I.R.C., *8 for the years in issue because P did not timely amend the Plans to comply with the Acts. Held, further, disqualification of the Plans cannot be avoided by any claimed relief provisions. For Petitioner: Jack M. Schultz For Respondent: Meso T. Hammoud
LARO
LARO
MEMORANDUM OPINION LARO, Judge: Respondent determined that the profit-sharing and pension plans (Plans) maintained by Ronald R. Pawlak, P.C. (petitioner), did not meet the requirements of section 401(a)[2] for the Plans' years ended June 30, 1986, 1987, 1988, and 1989. Respondent also determined that the trust (collectively the Trusts) constituting a part of each plan was consequently not exempt under section 501(a) from Federal income taxation for those years. Following these determinations, respondent revoked favorable determination letters previously issued to petitioner regarding the Plans. *9 The parties submitted this case under Rule 217(a) upon a stipulated administrative record, which was supplemented by evidence received at a hearing. [3] The issues relate to the timeliness of amendments made to petitioner's Plans as they affected the Plans' years ended June 30, 1986, 1987, 1988, and 1989, in order to bring the Plans into compliance with the requirements for tax-qualified status contained in section 401(a), as amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397; 98 Stat. 1426 (collectively referred to as the Acts). Petitioner attempts to invoke the Court's jurisdiction under section *10 7476 and Rule 210(c) to obtain a declaratory judgment as to whether the Plans and the Trusts met the requirements of sections 401(a) and 501(a), [4] respectively, for the Plans' years ended June 30, 1986, 1987, 1988, and 1989. Two principal issues arise for decision: (1) Whether petitioner may invoke the Court's jurisdiction under section 7476(a) and Rule 210(c) to render a declaratory judgment; and (2) whether because petitioner failed to make timely amendments to the Plans in accordance with changes in the law, the Plans are no longer qualified for the Plans' years ended June 30, 1986, 1987, 1988, and 1989. Because we answer both questions in the affirmative, we must also decide whether, as petitioner contends, there are mitigating factors that otherwise avoid disqualifying the Plans. *11 Background
The parties submitted this case to the Court under Rule 122(a) without trial and on the basis of the pleadings and the facts recited in jointly stipulated administrative records, which were supplemented by evidence received at a hearing. The facts and accompanying exhibits contained in the administrative records are incorporated herein by this reference. Petitioner's principal place of business was in Troy, Michigan, when its petition was filed with this Court. Petitioner is a corporation with Ronald R. Pawlak (Pawlak) as its president and sole shareholder. Pawlak is an attorney who practices products liability law. He is also a trustee and administrator of the Plans. Petitioner established the Plans, and they became effective as of July 1, 1970. The Plans report the results of their operations based on a fiscal year ending June 30. On April 19, 1984, petitioner amended the Plans to comply with the requirements of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, enacted September 3, 1982. On May 2, 1984, petitioner requested a determination from respondent regarding the Plans' qualification as individually designed *12 plans by filing with respondent a Form 5301, Application for Determination for Defined Contribution Plan, for each Plan. On September 7, 1984, respondent issued favorable determination letters regarding the Plans. The determination letters, however, explicitly reserved an opinion on whether the Plans satisfied the provisions of DEFRA, enacted July 18, 1984. On June 27, 1989, petitioner amended the Plans effective July 1, 1989. The firm of Corbel & Co. (Corbel) prepared these plan amendments. These amendments appeared to address the qualification requirements of the Acts and the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, enacted October 22, 1986. On June 29, 1990, petitioner requested a determination from respondent regarding the Plans' qualification by filing with respondent a Form 5302, Employee Census, and a Form 5307, Application for Determination for Adopter of Master or Prototype, Regional Prototype or Volume Submitter Plans, for each Plan. [5]
*13 Respondent began examining the Plans and on March 26, 1991, requested information on the Plans from petitioner. On April 18, 1991, respondent requested additional information and asked petitioner to adopt amendments, provided by respondent, to the Plans. Respondent informed petitioner that these amendments would retroactively amend the Plans to comply with the Acts for the subject years in an untimely manner. Petitioner adopted these amendments on April 25, 1991. On June 3, 1991, respondent again requested additional information on the Plans from petitioner. On July 16, 1992, respondent mailed to petitioner letters stating that she proposed to disqualify the Plans for their years ended June 30, 1986, 1987, 1988, and 1989. The letters also stated that petitioner had 30 days in which to file an administrative appeal of respondent's proposed disqualification. On September 18, 1992, petitioner filed administrative appeals for the Plans with the District Director in Cincinnati, Ohio. On July 29, 1992, respondent issued favorable determination letters regarding the Plans, effective for the Plans' years beginning July 1, 1989. On October 26, 1993, the Regional Director of Appeals *14 for the Central Region mailed petitioner final revocation letters revoking respondent's September 7, 1984, determination letters because the Plans were not timely amended to meet the requirements of the Acts. The revocation letters stated that the Plans did not comply with the requirements of section 401(a) for the Plans' years ended June 30, 1986, 1987, 1988, and 1989, and that the Trusts were not exempt from taxation under section 501(a) for the same years. On January 28, 1994, petitioner filed petitions with the Court seeking declaratory judgments that the Plans were qualified for the Plans' years ended June 30, 1986, 1987, 1988, and 1989. Discussion
Respondent determined that the Plans were not qualified for the years in issue because petitioner did not timely amend the Plans to comply with the Acts. Petitioner does not dispute that it did not timely amend the Plans but seeks relief from retroactive disqualification, asserting relief provisions contained in judicial decisions and claiming respondent's determination is an abuse of discretion. 1. Requirements for Making a Declaratory Judgment
The first issue we must decide is whether the Court has jurisdiction *15 to render a declaratory judgment regarding the qualification of the Plans under section 401(a) and the exemption of the Trusts under section 501(a). Respondent never challenged petitioner's attempt to invoke this Court's jurisdiction to render a declaratory judgment. We have the obligation, however, to make an independent review of this matter because this Court's jurisdiction is limited, and it may not be invoked by the parties' consent. See B.H.W. Anesthesia Found. v. Commissioner, 72 T.C. 681, 682 n.2 (1979). Petitioner bears the burden of proving the Court's jurisdiction. Id.
Section 7476(a) allows an employer to file a petition with the Court requesting that we render a declaratory judgment regarding the initial or continued qualification of a retirement plan, or whether the qualification of such a plan is revoked. Our judgment in such a case may address the status of a plan under section 401(a) and the status of the accompanying trust under section 501(a). Sec. 7476(a), (c)(1). Section 7476(b) contains five jurisdictional limitations restricting our authority to make such a declaratory judgment.[6] See also Rule 210(c). Any of these *16 limitations, if not satisfied, will prevent us from making a declaratory judgment and will result in the dismissal of the underlying petition. Rule 210(c); McManus v. Commissioner, 93 T.C. 79, 84 (1989). *17 Petitioner has satisfied the five jurisdictional limitations of section 7476(b). First, the petitions state that Ronald R. Pawlak, P.C., the employer, is the party petitioning the Court for a declaratory judgment. Thus, petitioner in this case is a proper party. Sec. 7476(b)(1). Second, petitioner contends, and respondent does not contest, that petitioner gave notice within the meaning of section 7476(b)(2) and the regulations thereunder. Petitioner provided us with the written notice that petitioner distributed to all employees. Rule 142(a). Thus, the second jurisdictional limitation, notice, is satisfied. Sec. 7476(b)(2); sec. 1.7476-2(c), Income Tax Regs. Third, the administrative process ended on October 26, 1993, when respondent mailed the final revocation letters. Efco Tool Co. v. Commissioner, 81 T.C. 976, 981 (1983). At that time, petitioner exhausted its administrative remedies within the Internal Revenue Service (Service) for purposes of the jurisdictional limitation of section 7476(b)(3). Id.; see also Hamlin Dev. Co. v. Commissioner, T.C. Memo. 1993-89. Thus, the third jurisdictional limitation, *18 exhaustion of administrative remedies, is satisfied. Fourth, a review of the administrative records reveals that the Plans and amendments were put into effect well before the filing of the instant petitions. Thus, the fourth jurisdictional limitation, that the Plans and amendments have been put into effect, is also satisfied. Sec. 7476(b)(4). Fifth, the petitions were mailed on January 24, 1994, a date that is within 91 days after the day respondent mailed petitioner the final revocation letters. [7] Thus, this final jurisdictional limitation, timeliness of the petitions, is also satisfied. Sec. 7476(b)(5). The Court may render a declaratory judgment on the continued qualification of the Plans because all five jurisdictional limitations have been satisfied. 2. Petitioner's Failure To Amend Timely the Plans
Section 401(a) sets forth the requirements that a trust forming part of a retirement plan, *19 such as a pension or profit-sharing plan, must meet for the trust to be a qualified trust entitled to receive favorable tax treatment. Both the employer adopting such a retirement plan and the employees participating in it receive favorable tax treatment. [8] The Service generally will issue a determination letter stating whether an existing retirement plan, or an amendment to a plan, qualifies for favorable tax treatment. See, e.g., Rev. Proc. 80-30, 1980-1 C.B. 685, superseded by Rev. Proc. 91-10, 1991-1 C.B. 439. The Service does not, however, have to issue a determination letter stating that a plan qualifies under section 401(a) in order for the plan to receive this favorable tax treatment. As a practical matter, an employer usually requests a determination letter because a favorable determination from the Service allows the employer to be assured that its contributions to the plan will be deductible. *20 An employer's reliance on a determination letter cannot be absolute because respondent has broad authority to revoke retroactively a determination letter. Sec. 7805(b); see also Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184 (1957). Respondent has prescribed, however, certain limitations on the exercise of this power. Specifically, section 601.201(1)(5), Statement of Procedural Rules, provides: Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment. *21 * * *
In this case, respondent issued petitioner favorable determination letters in September 1984, stating that the Plans qualified under section 401(a). Respondent's favorable determination letters, however, specifically provided that they did not express an opinion as to whether the Plans satisfied the provisions of DEFRA. The Acts extensively changed the requirements that must be met for an employee benefit plan to constitute a qualified plan under section 401(a). DEFRA, for example, included provisions that: (1) Amended the distribution requirements that were previously changed by TEFRA, DEFRA sec. 521, 98 Stat. 865; and (2) amended the rules that apply to determine whether a plan is topheavy, DEFRA sec. 524, 98 Stat. 872. REA, for example, included provisions that: (1) Lowered, from 25 to 21, the permissible age limits of employees that may be required to participate in a plan, REA sec. 202(a), 98 Stat. 1436; (2) changed substantially the break-in-service rules, REA sec. 202(c), (d), and (e), 98 Stat. 1437-1438; and (3) required that participants be notified of any benefits which are forfeitable if the participant dies before a certian age, REA sec. 206, 98 Stat. *22 1449. Both Acts generally established the plan year beginning after December 31, 1984, as the effective date by which a qualified plan was required to implement the required changes. DEFRA secs. 521-529, 98 Stat. 865-877; REA sec. 302(a), 98 Stat. 1451. The Service at various times extended the deadlines for making the required amendments because of the extensive changes to existing plans required by the Acts. Notice 85-5, 1985-1 C.B. 427, provided that in order for plans to comply with the Acts, they had to be amended by the last day of the first plan year beginning on or after January 1, 1985. The Service in addition has granted further extensions of the deadline for making amendments to comply with the Acts. These extensions, however never affected petitioner because at that time the Plans were individually designed plans. [9]Notice 86-3, 1986-1 C.B. 388; Announcement 86-60, 1986-19 I.R.B. 17 (May 12, 1986). Thus, respondent's guidelines established compliance dates for petitioner to make the required amendments as follows: Plan Year
Ended
Compliance Date
June 30, 1986
June 30, 1986
June 30, 1987
June 30, 1987
June 30, 1988
June 30, 1988
June 30, 1989
June 30, 1989
*23 Petitioner's Plans missed the noted compliance dates because it did not amend the Plans to comply with the requirements of the Acts for the subject years until April 25, 1991. Thus, the provisions in the written Plans that *24 should have been amended are defective. See Hamlin Dev. Co. v. Commissioner, T.C. Memo. 1993-89. A plan's written provisions and operation must meet the statutory requirements under section 401(a) for a plan to be qualified. Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 646 (1989). To be qualified, a plan must initially meet the formal requirements of section 401(a) and must continually be amended to comport with subsequent changes to the statutory requirements. Petitioner's Plans missed the noted compliance dates for making the changes necessitated by the Acts, and therefore the Plans must be disqualified for each of those Plans' years. See Mills, Mitchell & Turner v. Commissioner, T.C. Memo. 1993-99. Petitioner does not dispute that it failed to make timely amendments to the Plans but asserts that the Plans should not be disqualified retroactively because of our holding in Aero Rental v. Commissioner, 64 T.C. 331 (1975), and because respondent allegedly has acted in an arbitrary manner. a. Judicial Relief Under Aero Rental
Relying on the *25 Aero Rental case, petitioner correctly points out that section 401(b)[10] is not the exclusive means by which plan amendments are given retroactive effect for purposes of determining whether the plan qualifies under section 401(a). This Court has previously held that section 401(b) "was intended merely as a 'safe harbor' provision." Id. at 341. In the Aero Rental case, after adopting a plan in December 1969, the taxpayer initiated a request within 6 months for a determination from the Service, and thereafter, on July 1, 1971, amended the plan within approximately 2 months after the Service informed the taxpayer of the Service's objection to certain provisions. On those facts, the Court held the amendments were to be given retroactive effect for the 1969 and 1970 years. Id. at 339, 341-342. *26 Subsequent cases, however, have made clear that the holding in the Aero Rental case is not to be expansively construed. See, e.g., Bolinger v. Commissioner, 77 T.C. 1353, 1360-1361 (1981); Jack R. Mendenhall Corp. v. Commissioner, 68 T.C. 676, 681-682 (1977). Two requirements must be met in order for plan amendments to be given retroactive effect in accordance with the Aero Rental case. First, no circumstances must have arisen which call into operation the objectionable provisions of the plan. Bolinger v. Commissioner, supra at 1360. Second, the employer must have exercised "reasonable diligence" in attempting to obtain a favorable determination letter from the Service. Id.
Petitioner has failed to satisfy the second requirement of the Aero Rental case because it did not exercise reasonable diligence. Reasonable diligence, in its most fundamental form, requires an employer maintaining a plan to stay abreast of any change in the law, such as through legislation, regulations, or rulings, that could affect a favorable determination letter. Wisconsin Nipple & Fabricating Corp. v. Commissioner, 581 F.2d 1235, 1241 (7th Cir. 1978), *27 affg. 67 T.C. 490 (1976); see also Hamlin Dev. Co. v. Commissioner, T.C. Memo. 1993-89. In this case, petitioner received two favorable determination letters in September 1984. These letters explicitly stated that "This determination does not express an opinion as to whether your plan satisfies the provisions of the Deficit Reduction Act of 1984." A plain reading of these letters reveals that their favorable determinations could be affected by DEFRA. Petitioner's president and sole shareholder, Pawlak, is a lawyer, who should have read these letters for what they were, a caveat that respondent had reserved judgment on the Plans' compliance with DEFRA. Pawlak testified that he relied upon his accountant and Corbel to help him maintain the Plans' qualified status. In the exercise of reasonable diligence Pawlak should have inquired of Corbel or the accountant, or both, to see that timely amendments were put into effect. Further, the 7-year period that elapsed between the enactment of the Acts and the date on which petitioner finally amended the Plans to satisfy the Acts for the subject years also demonstrates petitioner's *28 failure to exercise reasonable diligence. Our prior holdings indicate that such a period of time does not show the exercise of reasonable diligence. See Mills, Mitchell & Turner v. Commissioner, supra; Kollipara Rajsheker, M.D., Inc. v. Commissioner, T.C. Memo. 1992-628. Because petitioner did not use reasonable diligence in maintaining the Plans' compliance with the law, we, therefore, need not reach the question whether any objectionable provisions contained in the Plans came into operation. b. Relief From Respondent's Discretion
Petitioner next argues that under section 601.201(1)(5), Statement of Procedural Rules, respondent has abused her discretion by retroactively disqualifying its Plans. [11] In effect, petitioner contends that it should not be punished for its failure to amend the Plans timely because no one was hurt by the Plans' objectionable provisions. According to petitioner, its employees will be harmed if respondent is allowed to disqualify the Plans retroactively because the Trusts will become liable for income tax in the years in which the Plans are not qualified. This in turn will lessen *29 the benefits that the Trusts will be able to pay in the future. This Court may not substitute its judgment for that of the Commissioner when reviewing discretionary administrative acts. Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641 (1989). The Commissioner's exercise of discretionary power will not be disturbed unless she has abused her discretion by making a determination that is unreasonable, arbitrary, or capricious. Id. Whether respondent has abused her discretion is a question of fact, and petitioner's burden of proof to show an abuse of discretion *30 is greater than that of the usual preponderance of the evidence. Pulver Roofing Co. v. Commissioner, 70 T.C. 1001, 1011 (1978). We reject petitioner's argument that respondent has abused her discretion in retroactively revoking the favorable determination letters. Petitioner's argument must fail. The applicable law changed, and petitioner has not proven its reasonable reliance on Corbel. The enactment of the Acts necessitated the amendment of petitioner's Plans within the applicable compliance dates. See Basch Engg., Inc. v. Commissioner, T.C. Memo. 1990-212. Petitioner failed to meet this obligation. Thus, respondent exercised her discretion according to the established standard. Sec. 601.201(1)(5), Statement of Procedural Rules. Petitioner failed to prove its reasonable reliance on Corbel. Petitioner asserts that at all times it relied on Corbel to ensure the Plans' compliance with the law. The record does not contain any evidence supporting this assertion other than statements made by Pawlak on behalf of petitioner. Rule 142(a). Even if petitioner could demonstrate reliance on Corbel, our prior opinions *31 indicate that we will not excuse an employer's failure to maintain a plan's qualified status because of reliance on others. See, e.g., Mills, Mitchell & Turner v. Commissioner, T.C. Memo. 1993-99; Stark Truss Co. v. Commissioner, T.C. Memo. 1991-329. Finally, we note that petitioner implicitly argues that we should excuse its failure to amend the Plans in a timely manner because of the Plans' small size. The Plans' covered two employees of a small law practice during the years in issue. Petitioner claims that because none of the objectionable provisions of the Plans came into operation, nobody was hurt by the Plans' failure to comply with the technical requirements of the Acts. We cannot accept petitioner's view. Congress establishes the requirements that a plan must meet for qualification under section 401(a), and we do not second guess its wisdom. We perceive the changes to the qualification requirements made by the Acts as examples of the constant congressional activity in the retirement plan area in order to expand employee rights and otherwise maximize the safety of the participants against, for example, the *32 detrimental operation of the plan. See Hamlin Dev. Co. v. Commissioner, T.C. Memo. 1993-89. An employer's size does not change this concern. We apply the law in an evenhanded manner and thus decline to accept petitioner's invitation to fashion a new relief provision based on an employer's size. We have considered all other arguments made by petitioner and find them to be without merit. To reflect the foregoing, Decisions will be entered for respondent. Footnotes
1. These cases were consolidated for purposes of briefing and opinion.↩
2. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The primary purpose of this hearing was to determine the timeliness of petitioner's petitions. At the hearing, we allowed petitioner the opportunity to introduce other evidence to supplement the administrative records on various matters such as notice to interested persons and its asserted reliance on a plan sponsor. Rule 217(a).↩
4. Petitioner did not present any separate arguments with respect to sec. 501(a) because there is no dispute that exemption of the Trusts under sec. 501(a) would follow automatically in this case from the qualification of the Plans under sec. 401(a). Thus, only sec. 401(a)↩ need be considered.
5. A master plan is a plan that is made available by a sponsoring organization for adoption by employers and for which a single funding medium is established for the joint use of all adopting employers. Rev. Proc. 84-23, 1984-1 C.B. 457, 459. A prototype plan is the same as a master plan except that a separate funding medium is established for each adopting employer. Id. The sponsoring organization must submit a request for an opinion letter relating to a master or prototype plan to the Internal Revenue Service's (IRS) National Office, whereupon the Internal Revenue Service will issue an opinion letter as to the acceptability under sec. 401 of the form of the plan and any related trust or custodial account. Id., 1984-1 C.B. at 462. An opinion letter issued to a sponsoring organization does not constitute a ruling or determination as to either the qualification of the plan as adopted by a particular employer or in the case of a prototype plan the exempt status of a related trust or custodial account. Id.↩
6. SEC. 7476. DECLARATORY JUDGMENTS RELATING TO QUALIFICATIONS OF CERTAIN RETIREMENT PLANS. * * * (b) Limitations. -- (1) Petitioner. A pleading may be filed under this section only by a petitioner who is the employer, the plan administrator, an employee who has qualified under regulations prescribed by the Secretary as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service, or the Pension Benefit Guaranty Corporation. (2) Notice. For purposes of this section, the filing of a pleading by any petitioner may be held by the Tax Court to be premature, unless the petitioner establishes to the satisfaction of the court that he has complied with the requirements prescribed by regulations of the Secretary with respect to notice to other interested parties of the filing of the request for a determination referred to in subsection (a). (3) Exhaustion of administrative remedies. The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service. A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made. (4) Plan put into effect. No proceeding may be maintained under this section unless the plan (and, in the case of a controversy involving the continuing qualification of the plan because of an amendment to the plan, the amendment) with respect to which a decision of the Tax Court is sought has been put into effect before the filing of the pleading. A plan or amendment shall not be treated as not being in effect merely because under the plan the funds contributed to the plan may be refunded if the plan (or the plan as so amended) is found to be not qualified. (5) Time for bringing action. If the Secretary sends by certified or registered mail notice of his determination with respect to the qualification of the plan to the persons referred to in paragraph (1) (or, in the case of employees referred to in paragraph (1), to any individual designated under regulations prescribed by the Secretary as a representative of such employee), no proceeding may be initiated under this section by any person unless the pleading is filed before the ninety-first day after the day after such notice is mailed to such person (or to his designated representative, in the case of an employee).↩
7. On Oct. 7, 1994, in an oral opinion we held that petitioner had timely filed its petitions with the Court.↩
8. In general, three favorable tax consequences flow from a qualified trust. First, in connection with the taxation of the plan, income earned by a plan that meets the requirements of sec. 401(a) is not subject to taxation while the plan's assets are held in a trust that is tax exempt under sec. 501(a). Sec. 401(a). Second, from the employer's point of view, subject to certain limitations, the employer receives an immediate tax deduction for contributions to a qualified plan. Sec. 404(a). Third, with respect to the employees, employees are not taxed on any employer contributions that are made on their behalf until the benefits are actually distributed (or otherwise made available) to them from the plan. Sec. 402(a). By comparison, if a plan does not meet the requirements of sec. 401(a)↩, the earnings of the plan are subject to tax, employer deductions for contributions may be deferred or eliminated, and employees are taxed on the value of the employer contributions under the rules of sec. 83. See, e.g., sec. 402(b).
9. The compliance date for an individually designed plan could have been satisfied after June 30, 1986, if such a plan adopted a master or prototype plan. Notice 87-80, 1987-2 C.B. 388, further modified Notice 86-3, 1986-1 C.B. 388, by extending to Jan. 14, 1988, the period within which an individually designed pension, profit-sharing, stock bonus, or annuity plan that was not timely amended could be replaced by the adoption of a master or prototype plan qualifying under sec. 12 of Rev. Proc. 84-23, 1984-1 C.B. 457↩, 464. This provision is not applicable here, however, because petitioner on June 27, 1989, adopted volume submitter plans, which were effective for the Plans' years beginning July 1, 1989.
10. Sec. 1.401(b)-1(a), Income Tax Regs., explains the operation of sec. 401(b) as follows: Under section 401(b) a * * * pension, [or] profit-sharing * * * plan which does not satisfy the requirements of section 401(a) on any day solely as a result of a disqualifying provision * * * shall be considered to have satisfied such requirements on such date if, on or before the last day of the remedial amendment period * * *, all provisions of the plan which are necessary to satisfy all requirements of section 401(a) * * * are in effect and have been made effective for all purposes for the whole of such period. * * *
Sec. 1.401(b)-1(b)(2), Income Tax Regs., defines the term "disqualifying provision". A plan provision which results in the failure of the plan to satisfy the qualification requirements of the Internal Revenue Code by reason of a change in such requirements effected by DEFRA and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, enacted Aug. 23, 1984, is not a disqualifying provision. See Mills, Mitchell & Turner v. Commissioner, T.C. Memo. 1993-99; Kollipara Rajsheker, M.D., Inc. v. Commissioner, T.C. Memo. 1992-628. Thus, petitioner does not argue that sec. 401(b)↩ applies in this case.
11. Petitioner also relies on sec. 1.401(b)-1(e), Income Tax Regs., for its argument that respondent abused her discretion. Petitioner's reliance on this provision is misplaced. Sec. 1.401(b)-1(e), Income Tax Regs., states that it "applies to disqualifying provisions". We previously discussed that the retroactive relief provisions of sec. 401(b) and the regulations thereunder do not apply in this case. See supra↩ note 10.