SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Robert JOHNSTON, Fiduciary Planning, Inc., Defendants.

No. 93–CV–73541–DT.

United States District Court, E.D. Michigan, Southern Division.

March 29, 1996.

defendants for their activities from June through December of 1989, during which time they raised $1,423,000 from eighteen investors through the offer and sale of Eurobond Exchange Ltd. a/k/a EuroGold and Bond Exchange Ltd. a/k/a EBX Trust A.G. ("Eurobond") investment. From these sales, defendants received commissions totalling $96,310. On February 17, 1994, this Court entered permanent injunctive relief in plaintiff's favor.[1] On August 2, 1994, this Court granted plaintiff's motion for disgorgement seeking $96,310 from defendants.[2]

Currently before this Court is defendants' motion to waive disgorgement based on their inability to pay. A hearing was originally scheduled on this matter for January 12, 1995. The parties waived argument at that time in order to conduct additional discovery relative to defendants' ability to pay the disgorgement order. On May 3 and 15, 1995, plaintiff and defendants respectively filed supplemental memoranda in support of their positions. On June 22, 1995, this Court held oral argument on defendants' motion. Following oral argument, this Court instructed counsel to provide it with defendants' financial information related to defendant Johnston's transfer of his interest in a condominium and a life insurance policy to his wife in July and September 1990, respectively.

On August 31, 1995, defendants filed a supplemental response in support of their present motion.[3] On January 5, 1996, plaintiff filed its second supplemental memorandum in opposition to defendants' motion.[4]

Jane E. Jarcho, Wendy D. Fox, Securities and Exchange Commission, Chicago, IL, for plaintiff.

Lawrence M. Scott, Raymond C. McVeigh, Troy, MI, for defendants.

## OPINION

DUGGAN, District Judge.

### I. Background

On August 23, 1993, plaintiff sought injunctive and other equitable relief against

---

1. Defendants consented to the injunctive order without admitting the complaint's allegations.

2. On September 26, 1994, the Court issued an amended order requiring defendants to pay that amount by October 31, 1994. During a telephone conversation between the parties on October 26, 1994, plaintiff granted defendants an extension of time to file a motion to waive payment under the disgorgement order.

3. In that document, defendants attach financial documents, including defendant Johnston's financial statement ("f/s") as of June 30, 1990, which demonstrate that the transfer of his interest in the condominium and life insurance policy to his wife did not render him insolvent. Plain-

tiff concedes the same. See Pl.'s 2d Supp.Mem. in Opp'n at 3 n. 1. As plaintiff must prove the existence of a fraud by clear and convincing evidence in order to set aside the transfers at issue, see United States v. Rode, 749 F.Supp. 1483, 1493 (W.D.Mich.1990), aff'd, 943 F.2d 53 (6th Cir.1991), the Court finds that in failing to offer evidence in opposition to defendant Johnston's June 30, 1990 f/s, plaintiff has not met its burden. Therefore, these transfers will not be set aside in order to satisfy the disgorgement award.

4. In abandoning its argument on the alleged fraudulent transfers, see n. 3, supra, plaintiff focuses solely on funds subject to disgorgement under defendants' pension/profit-sharing plan.

On February 7, 1996, defendants filed a reply to plaintiff's second supplemental memorandum. Finally, on February 16, 1996, plaintiff filed a response to defendants' February 7 reply. After having carefully reviewed the voluminous pleadings filed by the parties and the state of the law, the Court grants defendants' motion to waive disgorgement.

## II. Standard of Review

■ "In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud." *SEC v. Patel,* 61 F.3d 137, 139 (2d Cir.1995). *See SEC v. Huffman,* 996 F.2d 800 (5th Cir.1993), wherein the Court found that "[d]isgorgement wrests ill-gotten gains from the hands of the wrongdoer," *id.* at 802, and "is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." *Id.*

Disgorgement has been defined as "an equitable remedy designed to deprive defendants of all gains flowing from their wrong, rather than to compensate the victims of the fraud. The purpose of disgorgement is to deter violations by making them unprofitable . . ."

*SEC v. AMX, Int'l, Inc.,* 872 F.Supp. 1541, 1544 (N.D.Tex.1994). The *Huffman* Court found further that a "district court has broad discretion in fashioning the equitable remedy of a disgorgement order. It may decide that some property should be exempt from such an order and may take state law as its guide." 996 F.2d at 803 (internal citation omitted). It is the defendant's burden to prove an inability to pay by a preponderance of the evidence, *i.e.* to prove "the extent to which he is unable to pay the disgorgement order." *Id. See SEC v. AMX, Int'l, Inc.,* 7 F.3d 71, 73 (5th Cir.1993) ("financial inability is a defense for failure to comply with a court-ordered disgorgement"). *See also SEC v. Musella,* 818 F.Supp. 600, 602 (S.D.N.Y. 1993).

## III. Discussion

■ Plaintiff contends that funds returned to defendants' pension/profit-sharing plan ("the Plan") from the receiver appointed in *SEC v. Eurobond Exch. Ltd.,* No. 90–378 DT (GHKX) (C.D.Cal.) could be used to satisfy the disgorgement order. (Pl.'s Mem. at 3). *See* Defs.' Mot., Attach., Def. Johnston's f/s as of Nov. 1, 1994; Pl.'s Supp.Mem., Ex. B, Def.'s f/s as of Jan. 31, 1995.[5] The Plan invested $152,000 in Eurobond and received a large portion of that investment (more than $96,310) from the receiver. (Pl.'s Mem. at 3).[6] According to an agreement between the parties, $107,000 of those funds were placed in defense counsel's client trust account pending the disposition of defendants' present motion. *Id.*

Defendants argue that defendant Johnston's pension/profit-sharing account with defendant corporation is exempt from disgorgement, because the account is "ERISA qualified." (Defs.' Mot. ¶¶ 6, 7). The sole issue remaining before the Court, therefore, is whether funds in the Plan are exempt from disgorgement. If they are, defendants' motion must be granted; if not, their motion must be denied.

In *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court found that "ERISA § 206(d)(1)[7] bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 29 U.S.C. § 1056(d)(1)." *Id.* at 836, 108 S.Ct. at 2189 (emphasis in original). In *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court indicated that the *Mackey* Court in dictum presumed that "§ 206(d)(1) of ERISA erects a general bar to the garnishment of pension benefits from plans covered by the Act." *Id.* at 371, 110

---

**5.** On defendant Johnston's November 1, 1994 f/s, the pension/profit-sharing account was valued as $110,000.

**6.** Defendants characterize the investment somewhat differently. *See* Defs.' Reply Br. at 2–3 (Dec. 22, 1994). For purposes of their motion, however, the facts surrounding the Eurobond investment as it relates to the Plan are irrelevant.

**7.** Section 206(d)(1) of ERISA provides that "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

S.Ct. at 685. In *Guidry,* the Court refused to approve of an exception to ERISA's prohibition on assignment or alienation of pension benefits for an employee's malfeasance or criminal misconduct. *Id.* at 376, 110 S.Ct. at 687. In so doing, the Court recognized that:

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Id.* See *Patterson v. Shumate,* 504 U.S. 753, 765, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992) (citing *Guidry,* ERISA's goal of protecting pension benefits upon retirement ensures that "if a worker has been promised a defined pension benefit upon retirement ... he actually will receive it"). *See also In re Moore,* 907 F.2d 1476, 1479 (4th Cir.1990) ("[t]he overriding purpose of ERISA is to guarantee the security of employees' retirement income"); *Travelers Ins. Cos. v. Fountain City Fed. Credit Union,* 889 F.2d 264, 265–66 (11th Cir.1989).

In *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078 (10th Cir.1994) (on reh'g en banc), *cert. denied,* — U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995), the Tenth Circuit indicated that:

> ERISA is a comprehensive statute intended in significant part to ensure pension benefits will actually be received upon retirement by plan participants and beneficiaries. To that end, ERISA imposes "minimum standards" on private plan managers and employers. The anti-alienation provision of ERISA states, as a required standard for the form and payments of benefits, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1)....

Legislative history of section 206(d)(1) has been described as sparse and inconclusive. A House Report explains the anti-alienation provision was designed "[t]o further ensure that the employee's accured [*sic*] benefits are actually available for retirement purposes." H.R.Rep. No. 807, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.S.C.A.N. pp. 4639, 4670, 4734....

*Id.* at 1081–82 (citations omitted).

The Internal Revenue Service (IRS) Treasury regulation that interprets the non-alienability provision, 26 C.F.R. § 1.401(a)–13(a), further explains the non-alienability requirement of § 1056(d). It states that "a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or equity), alienated or subject to attachment, garnishment ... or other legal or equitable process."

Both the ERISA statute and the applicable regulation are clear, therefore, that pension plan funds may not be garnished. *Travelers,* 889 F.2d at 266. *See Guidry,* 39 F.3d at 1083 ("ERISA section 206(d)(1) protects ERISA-qualified pension benefits from garnishment...."). *See also In re Idalski,* 123 B.R. 222, 225 (Bankr.E.D.Mich.) ("It is well-settled that, state law to the contrary notwithstanding,[8] an antialienation clause contained in an ERISA-qualified pension plan precludes creditors of a plan beneficiary from levying on the beneficiary's interest in the plan") (citing *General Motors v. Buha,* 623 F.2d 455, 463 (6th Cir.1980)).

In *Buha,* the Sixth Circuit considered whether benefits under a pension plan which is covered by ERISA are subject to garnishment by a creditor of a plan beneficiary. The Court found first that:

> [g]arnishment is not mentioned in ERISA. However, both ERISA and the section of the Internal Revenue Code (IRC) dealing with "qualified" pension,

---

**8.** Under Michigan law, the following property of the debtor shall be exempt from levy and sale under any execution: "The right or interest of a person in a pension, profit-sharing, stock bonus, or other plan that is qualified under section 401 of the internal revenue code...." M.C.L.A.

§ 600.6023(1)(*l*). In the present case, plaintiff argues that the Plan is not qualified under section 401 of the Internal Revenue Code and therefore does not constitute an "ERISA qualified" plan which is exempt from this Court's disgorgement order.

profit-sharing and stock bonus plans contain provisions against assignment or alienation of plan benefits. Nearly identical language in 29 U.S.C. § 1056(d)(1)(ERISA) and 26 U.S.C. § 401(a)(13)(IRC) requires plans to contain a provision that "benefits provided under the plan may not be assigned or alienated."

623 F.2d at 460. In determining whether the use of the words "assignment" and "alienation" in § 1056(d)(1) indicated Congress' intention to prohibit only voluntary acts by the pension plan beneficiaries, the Court found that "pension plan benefits are not subject to garnishment and that the district court properly enjoined the proceedings in the Michigan court." *Id.* at 463. Based on the Supreme Court's rulings in *Guidry* and *Patterson,* the Sixth Circuit recognized that:

> [t]he Supreme Court appears to have drawn a bright line rule concerning the alienability of pension benefits: they may not be alienated either voluntarily or involuntarily, inside or outside of bankruptcy, or for equitable reasons. The rule is based upon the anti-alienation provision found in ERISA, which mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

*McGraw v. Society Bank & Trust (In re Bell & Beckwith),* 5 F.3d 150, 152 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). *See Forbes v. Lucas (In re Lucas),* 924 F.2d 597, 603 (6th Cir.), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991) ("Under § 1056(d)(1) then, all encroachments, both voluntary and involuntary, are prohibited"). *See also United States v. Sawaf,* 74 F.3d 119, 123 (6th Cir.1996) ("The Supreme Court [through *Patterson* and *Guidry*] has addressed the effect of § 206(d) in actions by private creditors and as to those 'vigorously has enforced § 206(d)'s prohibition on assignment or alienation of pension benefits' ").

In *Patterson,* while holding that "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2)," *see* 504 U.S. at 764–66, 112 S.Ct. at 2250,[9] the Supreme Court did not outline the characteristics of an "ERISA-qualified" plan. In the present case, plaintiff argues that the Plan is not "ERISA qualified" because the Plan was not in compliance with the IRC at the time of this Court's disgorgement order. The Court must therefore determine whether compliance with the IRC is a prerequisite to an "ERISA-qualified" plan and whether its compliance is necessary to prevent creditors from levying on the assets of the Plan.

In *Smith v. Mirman,* 749 F.2d 181 (4th Cir.1984), the Court found that:

> [i]n order to induce employers to establish ERISA pension and profit sharing plans, Congress provided favorable tax treatment for both employers and participants in plans determined to be qualified by the Internal Revenue Service. Under the Internal Revenue Code, a qualified plan not only must reflect the anti-alienation language of ERISA itself, but must unequivocally prohibit any access to plan funds by creditors of participants. IRC § 401(a)(13).

*Id.* at 182. Section 401 provides in part:

> A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. . . .

26 U.S.C. § 401(a)(13)(A). The courts identify the above-quoted language of IRC § 401(a)(13) as almost identical to ERISA § 206(d)(1)'s language. *See, e.g., United Metal Prods. Corp. v. National Bank of Detroit,* 811 F.2d 297, 299 (6th Cir.1987), *cert. dismissed,* 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988); *American Tel. & Tel. Co. v. Merry,* 592 F.2d 118, 120–21 (2d Cir. 1979); *Northwest Airlines, Inc. v. Roemer,* 603 F.Supp. 7, 9 n. 3 (D.Minn.1984).

---

9. 11 U.S.C. § 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title". The *Shumate* Court held that ERISA constitutes "applicable nonbankruptcy law." 504 U.S. at 758, 112 S.Ct. at 2247.

In *In re Witwer*, 148 B.R. 930 (Bankr. C.D.Cal.1992), *aff'd*, 163 B.R. 614 (9th Cir. BAP 1994), the court found that:

> [t]he provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification under the Internal Revenue Code. Although a transfer in violation of the required anti-alienation provision could result in adverse tax consequences I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce.

*Id.* at 937.[10] *See In re Acosta*, 182 B.R. 561, 565–66 (N.D.Cal.1994). In order for a plan to be considered a plan qualified for tax benefits, a provision complying with IRC § 401(a)(13) is required. *See Merry*, 592 F.2d at 121; *Roemer*, 603 F.Supp. at 9 n. 3; *In re Damast*, 136 B.R. 11, 12 n. 1 (Bankr. D.N.H.1991). *See also In re Leamon*, 121 B.R. 974, 979 (Bankr.E.D.Tenn.1990) (the plan was "required to include the anti-assignment and anti-alienation provision of ERISA § 206(d)(1), and, for tax qualification purposes, IRC § 401(a)(13)"); *In re Vogel*, 78 B.R. 192, 195 n. 5 (Bankr.N.D.Ill.1987) ("Both the ERISA statute, 29 U.S.C. § 1056(d), and the Internal Revenue Code, 26 U.S.C. § 401(a)(13), require a retirement plan to contain an anti-alienation cause [*sic*] in order to maintain a qualified status for insurance of availability of benefits and tax purposes, respectively"); *Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1480–81 (4th Cir.1990) ("a plan's ERISA-qualification and tax exempt status depend on compliance with the anti-assignment provisions in 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1)"). *Cf. Pitrat v. Garlikov*, 992 F.2d 224, 225–26 (9th Cir.1993) ("given *Shumate*, we hold that anti-alienation provision required for *ERISA qualification* and contained in these plans constitute transfer restrictions for the purpose of the § 541(c)(2) exclusion of property from the bankruptcy estate") (emphasis added).

Although the above-cited case law treats "qualification" under ERISA and the IRC separately, the bankruptcy court in *In re Hall*, 151 B.R. 412 (Bankr.W.D.Mich.1993), stated:

> there is a very strong indication that the Sixth Circuit requires an "ERISA qualified" plan: (1) to be tax qualified under I.R.C. § 401(a), (2) subject to ERISA, and (3) to include an anti-alienation provision. If even one requirement is not satisfied, a plan is *not* "ERISA qualified".

*Id.* at 419–20 (emphasis in original). This statement was dictum, because the court went on to hold that the plan at issue was not subject to ERISA. *Id.* at 421. *See* Jeffrey R. Houle, *Patterson and its Progeny: ERISA-qualified Pension Plans as Property of the Bankruptcy Estate after Patterson v. Shumate*, 8 Me.B.J. 298, 302 (Sept.1993) ("The court in *In re Hall* revealed in dictum the difficulty of determining what plans the Supreme Court was referring to when it stated that 'the term 'ERISA qualified,' however is not a term of art and is not defined in the Bankruptcy Code, the Internal Revenue Code, or ERISA' ").

*Compare In re Hanes*, 162 B.R. 733 (Bankr.E.D.Va.1994), wherein the court rejected the *Hall* court's finding that compliance with § 401(a) is required for a plan to be "ERISA qualified". In *Hanes*, the court found that:

> [t]o encourage compliance with ERISA, Title II of ERISA amended the [IRC] to provide tax benefits to both employers and employees. Qualifying for these tax benefits requires a pension plan to scale what has been described as a "legal mountain," i.e., the provisions set forth in the [IRC].

*Id.* at 738–39 (internal citation omitted). Turning to the inquiry of what it means to be "ERISA qualified," the Court assumed, as the court found in *Hall*, that the "term 'qualified' means that the plan satisfies both ERISA and the [IRC]...." *Id.* at 739. Under that assumption, the court indicated that "it has been suggested that, under this interpretation, creditors could reach plan benefits if the employer failed to amend the plan to comply with a change in the tax law." *Id.* (citing *Hall*, which quoted Christy & Shel-

---

10. In so finding, the court compared ERISA's provision which allows for the enforcement of the plan's terms under 29 U.S.C. § 1132. *Witwer*, 148 B.R. at 937.

**1226**

don, *Shumate and Pension Benefits in Bankruptcy*, 2 J.Bankr.L. & Prac. 719, 725 (1992)). The *Hanes* court declined to adopt the *Hall* rationale "because too much emphasis is placed on the technical requirements of the [IRC]...." *Id.* at 740. The court concluded, therefore, "that for purposes of § 541(c)(2), a plan is 'qualified' under ERISA if it is (1) governed by ERISA and (2) includes a non-alienation provision that is (3) enforceable under ERISA." *Id. See In re Bennett,* 185 B.R. 4, 6 (Bankr.E.D.N.Y.1995) (adopting the *Hanes* and declining the *Hall* approach in the "ERISA qualified" determination). *See also In re Kaplan,* 162 B.R. 684, 691 (Bankr.E.D.Pa.1993), *order aff'd,* 189 B.R. 882 (E.D.Pa.1995) (despite *Hall,* the court did "not believe that it is necessary for this court to ascertain whether the Plan is 'tax qualified'" to determine whether the plan is "ERISA qualified"). In the article by Christy & Sheldon, cited in both *Hall* and *Hanes,* the authors identify the situation presently before the Court, stating

> if a creditor were attempting to reach benefits in a plan that had once been qualified under IRC Section 401(a) but that had become disqualified by reason of the employer's failure to amend the plan to include a new provision required by a change in the law, the creditor could argue that the court [in *Shumate*] used the phrase "ERISA qualified" plan to mean a plan that was both qualified under IRC Section 401(a) and subject to ERISA. However, Section 206(d) of ERISA operates completely independently of the IRC qualification requirements, and since the IRC does not itself confer substantive rights on participants, a debtor could argue the plan still [*sic*] qualified under ERISA. *Shumate's* definition of protected plans then is ambiguous and leaves open the term to future courts' interpretation.

Christy & Sheldon at 725 (emphasis added).

Turning to defendants' compliance with the IRC in this case, even assuming the Plan is "qualified" as in compliance with TEFRA (as evidenced by the November 1984 IRS letter), defendants *admit* that the Plan is not in compliance with the REA, DEFRA or the TRA based on their failure to amend the

Plan in response to those Acts. In the cases relied upon by plaintiff in this case, *Pawlak v. Commissioner,* 69 T.C.M. (CCH) 1603, 1995 WL 7510 (1995) and *Hamlin Dev. Co. v. Commissioner,* 65 T.C.M. (CCH) 2071, 1993 WL 69569 (1993), the United States Tax Court found that the plans at issue were no longer "qualified" for certain plan years because of the petitioners' failure to make timely amendments to the plans in accordance with changes in the law, specifically the TEFRA, DEFRA and the REA. *See Mills, Mitchell & Turner v. Commissioner,* 65 T.C.M. (CCH) 2127, 1993 WL 80580 (1993) (disqualifying plan for certain years based on petitioner's failure to amend the plan to comply with the TRA and REA). *Cf. Clawson, M.D., Inc., P.S. v. Commissioner,* 65 T.C.M. (CCH) 2452, 1993 WL 118054 (1993). Based on these cases and defendants' failure to amend the Plan for compliance with the REA, DEFRA and TRA, plaintiff argues that the Plan was not in compliance with the IRC and therefore was not "ERISA qualified".

■ Even assuming plaintiff's argument is correct, *i.e.,* that the Plan was not in compliance with § 401(a) of the IRC at the time of this Court's disgorgement order, the Court finds under the analysis in *Hanes* that IRC compliance relates solely to "tax qualification" status and has no bearing on the enforceability of an anti-alienation provision under § 206(d) of ERISA. The Plan contains the following provision:

> 8.04 *The interest in the trust fund of any member or his beneficiaries .shall not* be alienable by the member or his beneficiaries, either by assignment or by any other method, and shall not *be subject to be taken by his creditors by any process whatsoever.*

Pl.'s Mem., Ex. A (emphasis added). Plaintiff does not dispute that § 8.04 of the Plan constitutes a valid anti-alienation clause under § 206(d) of ERISA. Since said clause is enforceable under ERISA, 29 U.S.C. §§ 1132(1)(B), (3)(A), the Court finds that the funds in the Plan are exempt from disgorgement in this case. The Court recognizes that the state of the law on this issue is nascent; however, despite decisions to the

contrary, the Court will not disturb the intent of Congress in enacting § 206(d) of ERISA, which was to ensure the availability of participants' benefits at retirement, by allowing plaintiff to seize the Plan's funds in violation of the anti-alienation clause. Exercising the Court's discretion, therefore, *see Huffman*, 996 F.2d at 803, the Court rejects plaintiff's argument that the funds in the Plan are not exempt from disgorgement for the Plan's failure to comply with Section 401(a) of the IRC.

For these reasons, defendants' motion to waive disgorgement is granted. An order consistent with this opinion will be issued forthwith.